CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

FEB 28 2012

JULIA C. DUDLEY, CLERK
BY: /s/ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| AMINA AL-HABASHY, | ) | Civil Action No. 7:11cv00306 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| COMMONWEALTH OF VIRGINIA, | ) | |
| DEPARTMENT OF JUVENILE | ) | |
| JUSTICE, | ) | |
| | ) | By: Samuel G. Wilson |
| Defendant. | ) | United States District Judge |

    Plaintiff Amina Al-Habashy brings this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* (2006), against her employer, the Virginia Department of Juvenile Justice ("DJJ").[1] Al-Habashy, an African-American female, alleges that she applied for a position as a probation supervisor and that DJJ refused, on the basis of race and religion, to hire her or even grant her a second-round interview. DJJ has moved for summary judgment on the grounds that Al-Habashy has not established a prima facie case of discrimination and that even assuming she has, she has not shown that DJJ's proffered reasons for its decisions were pretextual. Al-Habashy has offered several motions in response, including a motion to amend, a motion to reopen discovery, a motion to continue the trial date, and a motion for voluntary dismissal. The court will deny Al-Habashy's motions because she has done little during the last six months to participate in or prosecute her case, and has instead essentially screened her case from adversarial testing. And, because Al-Habashy has offered little more than speculation in support of her prima facie case, and because she has failed to offer or forecast any facts showing

---

[1] According to Al-Habashy, the City of Roanoke pays her salary, but she was recruited by, interviewed by, hired by, and answers to DJJ supervisors. (Pl.'s Resp. Mot. Summ. J. 1–2, E.C.F. No. 38.)

that DJJ's proffered reasons for its actions are mere pretext for unlawful discrimination, the court will grant DJJ's motion for summary judgment.

## I.

In the light most favorable to Al-Habashy, the facts are as follows.[2] Al-Habashy works for DJJ in the 23A District Court Services Unit in Roanoke, Virginia. DJJ interviewed Al-Habashy and eight other individuals for a "probation supervisor" opening in the 23A office. A panel of three upper-level DJJ employees conducted the interview, one of whom was an African-American female.[3] After the first round of interviews, DJJ offered three of those nine individuals a second interview—Al-Habashy was not among the offerees. After the interview, Al-Habashy complained to Rodney Hubbard, the director of her office (and also an African-American), that one of the panelists appeared to sleep during the interview and that she deserved a second interview. Hubbard investigated Al-Habashy's claims and informed her that he found no irregularities in the interview process, that DJJ would not give her a second interview, and that the panel had ranked her fifth out of nine candidates.[4] (Hubbard Aff. 3, E.C.F. No. 27-1.)

---

[2] Though Al-Habashy is currently represented by counsel, she has proceeded *pro se* until recently. As such, the court liberally construes her filings. See Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985).

[3] The court highlights this fact fully aware that actionable Title VII discrimination is not limited to conduct between individuals of different races. The Supreme Court has explained that, in the "context of racial discrimination in the workplace we have rejected any conclusive presumption that an employer will not discriminate against members of [her] own race. 'Because of the many facets of human motivation, it would be unwise to presume as a matter of law that human beings of one definable group will not discriminate against other members of their group.'" Oncale v. Sundowner Offshore Svcs., 523 U.S. 75, 78 (1998) (citing Castaneda v. Partida, 430 U.S. 482, 499 (1977)). However, an allegation of discrimination loses some persuasiveness when one or more key players in the process fall within the same protected class as the plaintiff. See Coggins v. Gov't of D.C., No. 97-2263, 1999 WL 94655, at *4 (4th Cir. Feb. 19, 1999).

[4] Hubbard stated in an affidavit that the panel never considered race, religion, or any other impermissible factor in reaching its decision; rather, the three individuals who received second interviews performed the best during their interviews, were able to articulate their direct experience with and knowledge of the Court Services Unit, and presented themselves as being better qualified than the other applicants. (Hubbard Aff. 2–4, E.C.F. No. 27-1.) Each of the three panelists provided similar reasoning. (See Garrison Aff., E.C.F. No. 27-2; Carroll Aff., E.C.F. No. 27-3; Showalter Aff., E.C.F. No. 27-4.)

2

Al-Habashy claims that DJJ decided to hire a white female for the position.[5] Whatever the truth of that alleged decision, budget cuts in fact forced the closing of the Natural Bridge Juvenile Correctional Center, and, pursuant to departmental policy, DJJ placed the laid-off superintendent of the Natural Bridge facility into the probation supervisor opening. (Hubbard Aff. 3–4, E.C.F. No. 27-1.) That being the case, none of the nine interviewees filled the position. Regardless, Al-Habashy filed a discrimination charge with the Equal Employment Opportunity Commission alleging that she was qualified for the probation supervisor opening, that one panelist appeared to sleep during the interview, and that the three finalists were white. EEOC was unable to conclude DJJ had discriminated against Al-Habashy, closed its file on the charge, and sent Al-Habashy a right-to-sue notice. She filed this lawsuit on June 29, 2011, within the requisite ninety days of receiving the EEOC's notice.

Since meeting that deadline, however, Al-Habashy has been less than punctual. After she filed this action pursuant to Title VII, 42 U.S.C. § 1981, and the ADEA, and after the court dismissed the § 1981 and ADEA claims by consent of the parties and granted Al-Habashy's motion to amend her Title VII claim, Al-Habashy began to show resistance to responding to e-mail messages, interrogatories, and other requests. On November 18, 2011, Al-Habashy asked the court for an extension of time to amend her complaint and for a delay of her pending deposition. Over DJJ's objections, the court gave Al-Habashy ten additional days to amend her complaint and extended the discovery deadline to January 13, 2012. In addition, the court ordered Al-Habashy to respond to DJJ's discovery requests. Al-Habashy did not comply with that order or respond to any of DJJ's other efforts to depose her and instead filed an untimely

---

[5] Hubbard, on the other hand, stated in his affidavit that after the second round of interviews, he learned that budget cuts would force layoffs elsewhere within DJJ and that, pursuant to DJJ policy, a newly laid-off individual would fill the probation supervisor vacancy. Thus, after the second round, he took no further action to fill the vacant position. (Hubbard Aff. 3, E.C.F. No. 27-1.)

3

response to an outstanding motion to compel, claiming to be unable to participate in discovery due to a vague medical condition.[6]

DJJ moved on December 28, 2011 to dismiss for lack of prosecution, arguing that Al-Habashy had not participated in her case in any substantive way other than to ask the court for extensions of time. Soon after, on January 12, 2012, DJJ filed a motion for summary judgment. On January 13th, Al-Habashy responded to the motion to dismiss for lack of prosecution, stating that she "never provided dates for her deposition" because she was "medically unable to do so,"[7] that she had "gone through a traumatic adjustment by filing this case," and that she was "doing the best that she [could] under the circumstances." On January 17th, Al-Habashy asked for another sixty-day extension of discovery and a new trial date. Six days later, she responded to the motion for summary judgment. Four days after that, she asked once again for permission to amend her complaint (which she had not yet done despite the court having twice granted leave to do so) in order to revive her § 1981 claim. Al-Habashy then retained counsel, moved again to extend discovery and continue the trial, and soon after moved to voluntarily dismiss. The court took all the outstanding motions under advisement and heard argument on DJJ's motions to dismiss and for summary judgment on February 16, 2012.

## II.

Altogether, since January 17, 2012, Al-Habashy has filed a motion to extend the discovery period, two motions to continue the trial, a motion to amend, a motion to reopen discovery and reset the discovery deadlines, a motion for an extension of time to respond to

---

[6] As she was professing her inability to participate in discovery in the instant case, Al-Habashy was filing another action in the Western District of Virginia, Al-Habashy v. Darren Scott Haley P.C. & Associates, 7:11-cv-00585 (W.D. Va. Dec. 12, 2011). In that case, Al-Habashy is suing her former attorney. That attorney represented Al-Habashy in a dismissed case in which she claimed violations of Title VII, § 1981, and the ADEA after she interviewed with Roanoke City Schools and the school system declined to hire her as a "transition specialist." See Amina Al-Habasha v. Roanoke City Sch., 7:07-cv-00460 (W.D. Va. Sept. 24, 2007).

[7] See supra, note 6.

4

DJJ's motion for summary judgment,[8] and a motion to dismiss pursuant to Rule 41(a)(2). DJJ argues that in light of Al-Habashy's conduct thus far, she should not be allowed to reset the litigation timeline at this late date. The court agrees with DJJ.

Al-Habashy has, for whatever reason, failed to fulfill even her most basic obligations as a litigant. Despite that fact, she seeks more time to prosecute her case because she has been "unable to discover relevant and material evidence" that would allow her to fully respond to DJJ's motions. Much to the contrary, Al-Habashy has been given *ample* opportunity to discover relevant and material evidence. Instead she has chosen to disregard DJJ's communications, ignore court orders, overlook the court's solicitous handling of her various motions regarding discovery and amendment, and otherwise screen her case from adversarial testing. Moreover, Al-Habashy's counsel, given a meaningful opportunity in open court, could forecast no evidence suggesting that granting additional time would lead to a different result in this case. Accordingly, the court will deny Al-Habashy's motions for extensions of time, for continuances, for Rule 41 dismissal, and to amend.

### III.

DJJ has moved for summary judgment on the grounds that Al-Habashy cannot establish a prima facie case of discrimination and that even assuming she has, she has not shown that DJJ's proffered reasons for its decisions were pretextual. The court agrees and finds that Al-Habashy has failed to establish a prima facie case because she has offered nothing more than speculation

---

[8] Al-Habashy responded to the motion for summary judgment on January 23, 2012, two weeks before she made this request for an extension of time to respond to the motion for summary judgment.

in support of it, and, moreover, that DJJ has offered legitimate and nondiscriminatory reasons for its actions that Al-Habashy has failed to undermine.[9]

Title VII prohibits discrimination in employment based on race and religion. See 42 U.S.C. § 2000e-2(a)(1). Al-Habashy may prevail in her Title VII claim in one of two ways. First, she may present direct or circumstantial evidence that her race or religion was a motivating factor in DJJ's actions. Holland v. Wash. Homes, Inc., 487 F.3d 208, 214 (4th Cir. 2007). Second, she may attempt to satisfy the test set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), which would allow her to raise an inference of discriminatory intent. See id.; White v. BFI Waste Servs., LLC, 375 F.3d 288, 295 (4th Cir. 2004).

The first step in the McDonnell Douglas test is to establish a prima facie case of discrimination by showing that (1) the plaintiff is a member of a protected group; (2) the plaintiff applied and was qualified for the position in question; (3) the plaintiff was rejected despite her qualifications; and (4) the plaintiff was rejected under circumstances that give rise to an inference of unlawful discrimination. EEOC v. Sears Roebuck & Co., 243 F.3d 846, 851 (4th Cir. 2001); see also id. n.2 ("The Supreme Court has made it clear that because the facts of given cases 'necessarily will vary' this formula 'is not necessarily applicable . . . to differing factual situations.' What is critical with respect to the fourth element is that the plaintiff demonstrate[s]

---

[9] Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). The party moving for summary judgment bears the burden of informing the court of the basis for its motion and identifying those parts of the record which demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In reviewing a summary judgment motion under Rule 56, the court "must draw all justifiable inferences in favor of the nonmoving party." United States v. Carolina Transformer Co., 978 F.2d 832, 835 (4th Cir. 1992) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)).

In her response to DJJ's motion for summary judgment, Al-Habashy appears to make a cross motion for summary judgment, but she makes no argument in support of her motion beyond claiming (incorrectly) that DJJ has offered *no evidence in support of its position*. To whatever extent Al-Habashy seeks summary judgment, it is denied for the reasons stated in this opinion.

6

he was not hired (or fired or not promoted, etc.) 'under circumstances which give rise to an inference of unlawful discrimination.'" (alteration in original) (citation omitted)).

If the employee can establish a prima facie case of discrimination, the burden of production then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its challenged action. Sterling v. Tenet, 416 F.3d 338, 345 (4th Cir. 2005). If the employer satisfies its burden, the presumption of discrimination established by the prima facie case disappears, and the employee must show that the employer's proffered reasons were merely a pretext for discrimination. Id. To satisfy the pretext requirement, the employee must demonstrate that the adverse employment decision was actually based on an improper factor or that the defendant's proffered reasons were simply "unworthy of credence." EEOC v. Clay Printing Co., 955 F.2d 936, 944 (4th Cir. 1992) (citing Tex. Dep't Cmty. Affairs v. Burdine, 450 U.S. 248, 256 (1981)).

Applying these standards, it is clear that DJJ is entitled to summary judgment. First, Al-Habashy has failed to establish a prima facie case of discrimination.[10] Even assuming that she has satisfied the first three steps in the McDonnell Douglas test, Al-Habashy offers nothing more than speculation that DJJ rejected her under circumstances giving rise to an inference of unlawful discrimination. Indeed, the entire basis of Al-Habashy's claim is that she was a qualified member of a protected class and that DJJ rejected her. The only "circumstance" to which Al-Habashy alludes is that one of the panelists appeared to sleep[11] and was "not attending to [African American applicants'] responses" during the interviews. (Pl. Resp. Mot. Summ. J. 9,

---

[10] Because Al-Habashy has presented no direct or circumstantial evidence of discrimination, she must attempt to satisfy the McDonnell Douglas test.

[11] On this point, the court notes that Al-Habashy has offered forms used by the panelists during the interview. The panelist accused of sleeping appears to have taken extensive notes during the interview—at least as extensive as the other two panelists. (Resp. Mot. Summ. J. 19–22; E.C.F. 38-2.)

7

E.C.F. No. 38.) Al-Habashy's naked opinion regarding the panelists' interview demeanor, without more, does not indicate circumstances giving rise to an inference of discrimination.

Second, even if the court assumes that Al-Habashy has established a prima facie case, DJJ has satisfied its burden of articulating a legitimate and nondiscriminatory reason for its conduct. See Adams v. Trs. of the Univ. of N.C.-Wilmington, 640 F.3d 550, 559–560 (4th Cir. 2011). With respect to the ultimate hiring decision, DJJ has explained that it was merely following departmental policy by placing a recently laid-off employee into the probation supervisor position, with the result that *none* of the nine applicants were hired for the job, including the three applicants who allegedly received impermissible preferential treatment. That reason is wholly legitimate and utterly nondiscriminatory. And with respect to DJJ's failure to offer Al-Habashy a second interview, Hubbard has stated under oath that the three individuals who received second interviews performed the best during their interviews, were able to articulate their direct experience with and knowledge of the Court Services Unit, and presented themselves as being better qualified than the other applicants. (Hubbard Aff. 2–4, E.C.F. No. 27-1.) In addition, each of the three panelists has offered sworn affidavits to the effect that impermissible factors had no bearing on their evaluations of Al-Habashy. (See Garrison Aff., E.C.F. No. 27-2; Carroll Aff., E.C.F. No. 27-3; Showalter Aff., E.C.F. No. 27-4.) In response, Al-Habashy offers nothing more than reiterated allegations.[12] And as stated previously, despite a meaningful opportunity in open court, Al-Habashy's counsel could point to or forecast no evidence showing that DJJ's proffered reasons were pretextual or unworthy of credence.

---

[12] To her summary judgment response, Al-Habashy has attached statements by several individuals (some unsigned) regarding alleged discrimination at DJJ. The statements are generic, unsupported, and offer little more than opinions and unrelated anecdotes. Not one of them establishes that Al-Habashy suffered discrimination in this case. The court also notes that a number of the statements were apparently prepared and signed squarely during the period Al-Habashy claims to have been too ill to participate in this case.

8

Case 7:11-cv-00306-SGW-RSB Document 50 Filed 02/28/12 Page 8 of 9 Pageid#: 449

Consequently, Al-Habashy has failed to raise a genuine issue of material fact that DJJ's explanation is purely pretextual, and the court will grant DJJ's motion for summary judgment.[13]

## IV.

For the reasons stated, the court will deny Al-Habashy's motions for extensions of time, for continuances, for Rule 41 dismissal, and to amend. Further, the court will grant DJJ's motion for summary judgment.

**ENTER**: This 28th day of February, 2012.

UNITED STATES DISTRICT JUDGE

---

[13] Moreover, "[r]egardless of the route a plaintiff follows in proving a Title VII action, . . . the existence of some adverse employment action is required." James v. Booz-Allen Hamilton, Inc., 368 F.3d 371, 375 (4th Cir. 2004). An adverse employment action is a discriminatory act that "adversely affect[s] the terms, conditions, or benefits of the plaintiff's employment." Id. (internal quotation marks omitted).

During oral argument, Al-Habashy's counsel seemed to concede that DJJ's actual hiring decision did not appear to be an action giving rise to Title VII liability. Thus, the only conceivable adverse employment action was DJJ's failure to offer Al-Habashy a second interview for the probation supervisor opening (a position that, due to budget cuts, was never filled by anyone who *did* receive a second interview). As a result of DJJ's denial of a second interview, Al-Habashy suffered no change in title, no decrease in pay, no reassignment, no shift in job duties, and she has identified no way in which the denial of a second interview would affect her future employment. DJJ's employment action was therefore adverse in only the most imaginative sense. Viewed through this lens, Al-Habashy's claim fails at the most fundamental level of inquiry.

9